## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|---|---|---|---|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Katie Thibodeaux | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Michael Faber | Daniel Gonzalez |

**Proceedings:**     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR,
              IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## I.     INTRODUCTION

On May 12, 2015, Randall Miller ("plaintiff") filed the instant action in Los Angeles Superior Court against KOWA American Corp. ("KAC" or "defendant"). Ex. 1, Dkt. 2. On July 27, 2015, defendant timely removed this case to federal court, asserting diversity jurisdiction. Dkt 1. The operative First Amended Complaint ("FAC") was filed on January 12, 2016, and asserts five claims against defendant: (1) sexual harassment in violation of public policy, pursuant to Cal. Gov. Code § 12940; (2) failure to prevent sexual harassment; (3) retaliation; (4) constructive wrongful termination; and (5) battery. In addition to other damages, plaintiff seeks punitive damages. FAC ¶ 12. Plaintiff's claims derive from a December 2013 incident in Japan wherein Atsuteru Shimizu repeatedly grabbed plaintiff's genitals. Plaintiff complained to KAC about the unwelcome touching and KAC allegedly retaliated against plaintiff for his complaint.

On June, 29, 2016, defendant filed the instant motion for summary judgment or, in the alternative, partial summary judgment, regarding all of plaintiff's claims and alleged entitlement to punitive damages. Dkt. 22 ("Motion"). Plaintiff filed his opposition to the motion ("Opp'n") on July 22, 2016, Dkt. 28-29, and defendant filed a reply on August 1, 2016, Dkt. 30.

On August 22, 2016, the Court provided the parties with a tentative order and held oral argument on the instant motion. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|----------|------------------------|------|-----------------|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

## II.   BACKGROUND

Except where noted, the following facts are undisputed.

Plaintiff was employed by Kowa Optimed, Inc. ("KOMI") in December 2013. Defendant's Proposed Reply Statement of Uncontroverted Facts ("Reply SUF"), at No. 1. Plaintiff first joined KOMI on or about July 17, 2013. Id. at No. 2. On October 1, 2014, KOMI merged into KAC, which continued to employ plaintiff as a National Sales Manager whose salary included commissions from sales. Id.

Defendant, KAC, is affiliated with Kowa Company Ltd. ("KCL"). The parties dispute the nature of the relationship between these two corporate entities. Kai Clarke, president of KOMI from May to October 2013, testified during his deposition that KCL had "100 percent" authority over the way KOMI operated its business. Clarke Depo., pg. 13:24-14:18. Clarke referred to KCL as "Kowa Japan." Id. at 10:22-24. Clarke further stated that he understood himself to be an employee of both KCL and KOMI, despite holding a title as President of KOMI. Id. at 12:2-3. Reid Anthony replaced Clarke as president of KAC after its merger with KOMI. During his deposition, he acknowledged his understanding that bonuses and raises for KAC employees required approval from KCL. Anthony Depo., pg. 96:14 - 97:22.

In December 2013, plaintiff made a business trip to Japan for five days. Id. at No. 6. During the trip, plaintiff met Atsuteru Shimizu. Id. at No. 8. Plaintiff alleges Shimizu was a "managerial employee," Id. at No. 57, although defendant objects to plaintiff's evidence of that fact, Reply Statement of Uncontroverted Facts ("RS") at No. 57. The parties also dispute whether or not Shimizu was then an employee of KAC or both KCL and KAC (at that time KOMI) or neither. Reply SUF at No. 9. The two men discussed their families and life in Japan. Id. at No. 8. Plaintiff had no difficulties with Shimizu until the two attended a company Christmas party at the end of the trip. Id. at No. 8; Miller Depo., pg 217:7-9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

At some point during the Christmas party, Shimizu grabbed plaintiff's testicles for "at least a couple of seconds"[1] in such a manner that plaintiff believed Shimizu intended to bond with him. Id. at No. 12. Plaintiff has testified that Shimizu grinned and said, "Hey, big boy." Plaintiff Depo., pg. 110:1-6. Furthermore, plaintiff testified that he was "upset, distraught, shocked." Id. at pg. 117:18-21. Thereafter, Shimizu, plaintiff, and others walked to a bar. Reply SUF at No. 13. While waiting to enter the bar, Shimizu grabbed plaintiff's genitals again for a briefer period and plaintiff was able to fend him off. Id. at No. 13. At that time plaintiff testified that he told Shimizu, "Don't touch me." Plaintiff Depo., pg. 118:13-23. Nonetheless, Shimizu grabbed plaintiff's testicles a third time, at which point plaintiff viewed the touching as sexual harassment. Reply SUF at No. 14. At least one other employee observed Shimizu's behavior when it occurred and told plaintiff, "don't tell anybody." Reply SUF at No. 16. Plaintiff alleges no other offensive touching by Shimizu.

Plaintiff cannot recall precisely when he first reported the incident in Japan to KAC, but he believes he complained of the incident in March 2014. Id. at Nos. 18-19. On May 27, 2014, plaintiff made a written complaint regarding Shimizu's touching. Id. at No. 21. After his written complaint, KAC undertook a thorough investigation, including following up with potential witnesses. Id. at No. 23. Anthony was also notified of plaintiff's complaint. Id. at No. 23. As a result of plaintiff's complaint, Shimizu received harassment and sensitivity training. Id. at No. 24. The parties dispute the adequacy of this response and its timing. Id. at No. 58. In September 2014, plaintiff received an update on KAC's investigative and remedial actions to date and decided to lodge a formal sexual harassment complaint, which he completed on or about September 19, 2014. Id. at Nos. 26-27.

Soon thereafter, plaintiff requested authorization to travel to the East Coast to see clients and his request was denied. Id. at No. 40. The parties dispute whether this denial was motivated by retaliatory animus. Id. Although plaintiff had East Coast clients at that time, the company planned to divide national sales into regions in the near future such

---

[1]The parties dispute whether this touching was "only a 'couple seconds,'" or "at least a couple of seconds." Id. at No. 12. However, the evidence cited by defendant for the nature and length of contact states "at least a couple of seconds." Plaintiff Depo., pg. 11:7-8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|----------|------------------------|------|-----------------|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

that plaintiff would not service East Coast clients.  Miller Depo., pg. 210:19-211:8.
Plaintiff claims that he was also excluded from various meetings, including, a product
meeting in October or November 2014, staff meetings in October or November 2014, and
one or two forecast meetings sometime in October or November 2014.  Id. at Nos. 41-43.
Plaintiff claims, and the defendant disputes, that he was excluded from meetings and
isolated in retaliation for his filing of a formal sexual harassment complaint.  Id. at No.
59.  The parties dispute the motive for why plaintiff may have been excluded from
meetings.  Id. at Nos. 41-43.

On October 15, 2014, plaintiff informed KAC, through Leigh Reagan, that he
would seek counseling for the events in Japan.  Id. at No. 35.  Reagan, KAC's head of
human resources ("HR") contacted KAC's worker's compensation provider in order to
obtain medical and psychological care requested by plaintiff.  Id. at No. 36.  Plaintiff
resigned his employment in January 2015.  Id. at No. 51.  Plaintiff asserts, and defendant
disputes, that his resignation was compelled by defendant's retaliation and isolation of
plaintiff for his complaints of sexual harassment.  Id. at No. 60.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  The moving party bears the initial burden of identifying relevant portions of the
record that demonstrate the absence of a fact or facts necessary for one or more essential
elements of each claim upon which the moving party seeks judgment.  See Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out
specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The
nonmoving party must not simply rely on the pleadings and must do more than make
"conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871,
888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for
the moving party if the nonmoving party "fails to make a showing sufficient to establish
the existence of an element essential to that party's case, and on which that party will
bear the burden of proof at trial."  Id. at 322; see also Abromson v. Am. Pac. Corp., 114
F.3d 898, 902 (9th Cir. 1997).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|---|---|---|---|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.    ANALYSIS

Defendant here moves for summary judgment with respect to each of plaintiff's claims and plaintiff's recovery of punitive damages. As outlined below, defendant's motion is **DENIED** with respect to claims One through Four and recovery of punitive damages. Defendant's motion is **GRANTED** with respect to claim Five for Battery.

### A.    Claim One - Sexual Harassment.

Genuine material issues of disputed fact persist with respect to plaintiff's claim of sexual harassment. Defendant argues that plaintiff's sexual harassment claim must fail because, as a matter of law, Shimizu was not a KAC employee and because, even if he were, no rational trier of fact could deem the acts in question sufficiently serious or pervasive to create a hostile work environment.[2] The Court is not persuaded by either contention.

---

[2]The defendant also contends that plaintiff has not presented admissible evidence that Shimizu was employed by KCL, let alone KAC. On a motion for summary judgment, the defendant has the burden to present undisputed facts that entitle it to judgment as a matter of law. Defendant has not done so with respect to Shimizu's employer. Furthermore, having reviewed the evidence presented by both sides and taking it in the light most favorable to plaintiff with regard to Shimizu's employment, the Court finds a material issue of disputed fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

**1.    Integrated Enterprise.**

Plaintiff argues that KAC may be liable for harassment by a KCL employee in Japan if the two companies are an "integrated enterprise," such that they should be treated as a single employer.  To determine if two corporations should be treated as a single employer with respect to the California Fair Employment and Housing Act ("FEHA"), California courts have adopted the four factor test used in federal actions under Title VII of the 1964 Federal Civil Rights Act.  Laird v. Capital Cities/ABC, Inc., 68 Cal. App. 4th 727, 737 (1998).  Under the test, courts determine: (1) the extent the corporations' operations interrelate, (2) whether the corporations share common management, (3) whether there is centralized control of labor relations, and (4) whether the corporations are under common ownership or financial control.  Id.  Although there is a "strong presumption" that a subsidary company's employees are not employees of the parent company, Id. (citing Frank v. U.S. West, Inc., 3 F.3d 1357, 1362 (10th Cir. 1993)), the test is designed such that the definition of "employer" will be liberally construed, Id. at 738 (citing Baker v. Stuart Broadcasting Co., 560 F.2d 389, 391-392 (8th Cir. 1977)).  Although courts consider all four factors, common ownership or control is never enough to establish two companies are a single enterprise and centralized control of labor relations is the most important single factor.  Id. at 738.  The critical question is, "'[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?'"  Id. (quoting Frank v. U.S. West Inc., 3 F.3d 1357, 1363 (10th Cir. 1993)).

Here, there a material issue of disputed fact as to whether KCL and KAC are separate enterprises.  Regarding the most important factor, centralized control of labor relations, plaintiff has put forward evidence that KCL had "100 percent" authority over the way KOMI/KAC operated its business.  Clarke Depo., pg. 13:24-14:18.  Reid Anthony, Clarke's predecessor as president of KOMI testified that, as he understood it, bonuses and some raises for KAC employees needed approval from KCL.  Anthony Depo., pg. 96:14-97:22.  Both Reid Anthony and Leigh Reagan, KAC's HR manager, testified that KCL in Japan had to, and did, approve KAC's response to plaintiff's sexual harassment complaint.  Anthony depo., pg. 29:21–24; Reagan Depo., pg. 66:23-67:5.  They coordinated their response with employees in Japan through Ohide Iwasa, chairman of the KAC board.  Id.  Accordingly, the Court concludes there is a material issue of disputed fact with respect to whether and how centralized HR management was between the two companies generally and with respect to plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|----------|------------------------|------|-----------------|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

Having found a factual dispute as to the companies' centralized control of labor relations, the Court now turns to the remaining three factors. With respect to both the interrelation of operations and the presence of common management, the Court again finds evidence creating a material issue of disputed fact. For instance, when asked, "Did [KCL] have any authority over the way [KOMI] operated its business," Clarke explained:

> [Answer] Absolutely. 100 percent. [KCL] determined. Not only which products were available to us, at which price they were available, they also supplied us with resources, both financial, human and - from your prior question, Jun Hanzawa, at the time when I was hired, was an employee of KCL. He sat on KOMI. He was the communication between KOMI and KCL. Every single day, he would send a daily report.
>
> Sometimes I was aware of what he was discussing. But most of the times not, to Japan, to KCL, and every major thing that we undertook as an organization was linked to and usually had tacit agreements or approvals that had to be put in place for us to commence.
>
> [Question] Were you directed, in terms of what you were authorized or not authorized to do, without approval by [KCL]?
> . . .
>
> [Answer] I was directed by Hideki Sakai on a regular basis on what I had to do. And sometimes by KCL members who were communicating with us, depending on the issue. We relied 100 percent on KCL to supply us with product, or the pricing. I may be interfacing with somebody who is giving me direction, 'No, we can't have this,' or, 'Yes, we can,' and the pricing and so forth.
>
> Clarke Depo., pg. 14:5-15:5.

Turning finally to the issue of financial control, Clarke explained his understanding based on a document from KCL that "all the actions that [he] could do . . . each necessitated approval from KCL. And if you see, it's pretty much everything that I do," including every single financial transaction with a bill. Clarke Depo., pg. 17:11-25. The defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|---|---|---|---|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

has not presented undisputed facts showing none of the four factors apply to the relationship between KCL and KAC.

Defendant objects to the portions of Clarke's and Anthony's depositions discussed above as lacking foundation and being outside the witnesses' personal knowledge. The Court disagrees. "Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. Adequate foundation was laid that these two witnesses were presidents of KOMI and KAC respectively and testified as to their respective experiences and understanding of KCL's authority over matters under their respective purviews. Clarke testified that a KOMI board member was the go-between for KOMI and KCL, through whom he communicated to Japan because "every major thing that we undertook had tacit agreements or approvals that had to be put in place." Clarke Depo., pg. 14:5-18. Similarly, Anthony communicated to Japan through Iwasa. Anthony Depo., pg. 29:21-24. Furthermore, each witness offered facts supporting their understanding of the corporate relationship, such that neither could be deemed merely conclusory or vague. Finally, each witness's testimony was rationally based on their perception of the relationship between the companies, rather than a specialized legal opinion such that it would run afoul of Federal Rule of Evidence 701 limiting lay witness opinions.

Viewing the evidence in the light most favorable to the plaintiff, the Court finds that a material issue of disputed fact exists as to whether KAC and KCL were a single enterprise. Under these circumstances, the Court cannot conclude as a matter of law that KAC did not employ Shimizu as a single employer with KCL.

## 2.     Hostile Work Environment.

Defendant next argues that the undisputed facts of Shimizu's conduct do not, as a matter of law, establish sexual harassment that is adequately serious or pervasive to create a hostile work environment. Almost all of the material facts related to Shimizu's conduct are undisputed. Reply SUF at Nos. 12-16. Plaintiff responds that the undisputed facts are serious enough to create a material issue of disputed fact as to whether Shimizu's conduct could, standing alone, create a hostile work environment. The Court agrees with plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|----------|------------------------|------|-----------------|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

"The prohibition of harassment . . . forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." Singleton v. U.S. Gypsum Co., 140 Cal. App. 4th 1547, 1563 (2006) (citing Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81-82 (1998). The plaintiff claims he faced a hostile work environment. Such a claim requires proof that, "the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that [the employee] was actually offended." Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d 590, 609–10 (Ct. App. 1989). The severity and pervasiveness are evaluated from the victim's perspective, Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991), and in light of the totality of the circumstances, Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Furthermore, the required showing of the conduct's seriousness, "varies inversely with the pervasiveness or frequency of the conduct." Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991). Courts rarely find that a single instance of sexual harassment rises to the level of creating a hostile work environment, however, the inquiry turns on the seriousness of the harassment and the perpetrators work-relationship to the plaintiff. Brooks v. City of San Mateo, 229 F.3d 917, 927 n.9 (9th Cir. 2000) ("a sexual assault by a supervisor, even on a single occasion, may well be sufficiently severe so as to alter the conditions of employment"). For a single instance of sexual harassment to suffice, "the incident must be extremely severe." Id. at 926.

There is no distinct line at which a single incident is insufficiently serious to create a hostile work environment as a matter of law. Some acts clearly satisfy this high bar. See e.g., Little v. Windermere Relocation, Inc., 301 F.3d 958, 967 (9th Cir. 2002) (reversing a grant of summary judgment where plaintiff endured three violent rapes in a single evening). However, the *minimum* level of seriousness to survive a summary judgment motion is less obvious. Compare e.g., Berry v. Chicago Transit Auth., 618 F.3d 688, 689 (7th Cir. 2010) (reversing a grant of summary judgment where a male coworker lifted a woman by her breasts and rubbed her buttocks against his body three times before dropping her to the ground and pushing her against a fence), with Brooks, 229 F.3d at 921 (affirming the grant of summary judgment for the defendant where a co-worker in a single evening touched plaintiff's stomach; commented on its sexiness and smoothness; boxed the plaintiff against her workstation; forced his hand underneath her sweater and bra to fondle her breast; and ceased only when a third coworker interrupted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|---|---|---|---|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

The parties dispute where on this continuum of factually distinguishable cases the present case falls. However, where the severity of the alleged abuse "is questionable, it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment." Davis v. Team Elec. Co., 520 F.3d 1080, 1096 (9th Cir. 2008). Here, it is undisputed that Shimizu grabbed plaintiff's genitals three separate times over the course of one evening, shocking the plaintiff, and being fended off each time. Reply SUF at Nos. 12-15. These incidents occurred in public and in front of coworkers. Id. at Nos. 13;16. Having observed the incidents, one coworker told plaintiff, "don't tell anybody." Id. at No. 16. Defendant has not presented undisputed facts showing no reasonable jury could view Shimizu's conduct as sufficiently serious. The Court cannot conclude, as a matter of law, that Shimizu's conduct is not so offensive as to alter the conditions of the plaintiff's employment. Accordingly, the Court **DENIES** defendant's motion for summary judgment with respect to plaintiff's sexual harassment claim.

### B.    Claim Two - Failure to Prevent Sexual Harassment.

Employers are required by California Government Code Section 12940(k) to take "all reasonable steps necessary to prevent discrimination and harassment from occurring" in the workplace. The defendant contends that it is entitled to summary judgment with respect to plaintiff's failure to prevent sexual harassment claim because Shimizu was not a KAC employee, KAC took all reasonable steps to prevent the harassment, and the FEHA does not create a private right of action for failure to prevent sexual harassment.

The Court has already addressed defendant's argument that Shimizu was not a KAC employee, finding a material issue of disputed fact as to whether KAC and KCL were a single employer.

With respect to defendant's contention that KAC took all reasonable steps to prevent sexual harassment, the defendant only presents facts (some disputed) purporting that KAC trained employees on sexual harassment *after* Shimizu inappropriately touched plaintiffs genitals. Reply SUF at Nos. 3; 24; 26. However, California Government Code Section 12940(k), "creates a statutory tort action with the usual tort elements [duty of care to plaintiff, breach of duty, causation and damages]." Veronese v. Lucasfilm Ltd., 212 Cal. App. 4th 1, 28 (2012) (citing Trujillo v. North County Transit Dist., 63 Cal. App. 4th 280, 286 (1998)). Plaintiff's tort claim for failure to prevent sexual harassment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|----------|------------------------|------|-----------------|
| Title    | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

derives from Shimizu's conduct in December 2013. Therefore, the relevant inquiry is the reasonableness of KAC's prevention efforts *before* December 2013. Only actions taken before Shimizu's conduct could have prevented it. The only relevant, undisputed fact regarding the defendant's actions *prior to* Shimizu's conduct is that KOMI had a sexual harassment policy in its employee manual. Reply SUF at 3. The Court cannot say that the existence of a policy, standing alone, entitles defendant to summary judgment as a matter of law. The Court finds a material issue of disputed fact as to whether KAC took all reasonable steps to prevent sexual harassment.

Finally, turning to defendant's legal contention that no private right of action for failure to prevent sexual harassment exists, the Court does not agree. The defendant bases this contention upon it's reading of <u>Department of Fair Empployment & Housing v. Lyddan Law Group</u>, No. 10-04-P, FEHA Precedential Decs. 2010 [2010 CAFEHC LEXIS 4] (Oct. 21, 2010). <u>Lyddan</u> suggested a private right of action for failure to prevent harassment or discrimination may not exist absent a finding of harassment or discrimination. <u>Id.</u> at 35. However, courts since <u>Lyddan</u> have found it inapplicable to cases where the plaintiff still had a viable sexual harassment or discrimination claim. <u>See e.g.</u>, <u>Ortega v. Univ. of Pac.</u>, 2013 WL 6054447, at *4 (E.D. Cal. Nov. 15, 2013)("Even assuming that <u>Lyddan</u> is precedential, it does not apply in this case, which presents more than a 'stand alone' claim for failure to prevent discrimination"); <u>Mitchell v. HFS N. Am., Inc.</u>, 2011 WL 2961468, at *7 (E.D. Cal. July 20, 2011) (concluding <u>Lyddan</u> was inapplicable where "discrimination remains as an underlying basis for the claim"); <u>Veronese</u>, 212 Cal. App. 4th at 28 (finding error, after <u>Lyddan</u>, where the lower court failed to instruct the jury on a failure to prevent discrimination claim in a private, civil suit). Here the Court has found a material issue of disputed fact as to whether sexual harassment occurred. Where plaintiff's underlying sexual harassment survives summary judgment, the Court is not persuaded he has no claim for failure to prevent sexual harassment.

It appears that plaintiff has a claim, which turns on the reasonableness of defendant's efforts at preventing sexual harassment. Accordingly, the Court **DENIES** defendant's motion for summary judgment with respect to plaintiff's failure to prevent sexual harassment claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|---|---|---|---|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

### C.    Claim Three - Retaliation.

California Government Code Section 12940(h) makes it unlawful to "discharge, expel or otherwise discriminate against any person because that person has . . . filed a complaint under [the Fair Employment and Housing Act]."  California courts employ the McDonnell Douglas burden-shifting framework in analyzing retaliation claims. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973)).  Thus, a plaintiff claiming retaliation under FEHA must first establish a prima facie case by showing that "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." Yanowitz, 36 Cal. 4th at 1042.  Once the prima facie case is established, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the adverse action.  Scotch v. Art Inst. of California Orange Cty., Inc., 173 Cal. App. 4th 986, 1020 (2009).  Upon making such a showing, the burden shifts back to the plaintiff to establish intentional retaliation.  Id. at 1021.

Defendant argues that plaintiff's claim for retaliation must fail because he suffered no adverse employment consequences and cannot show intentional retaliation.  The Court concludes that there are factual disputes that materially affect each of these contentions.

### 1.    Plaintiff's Prima Facie Case.

To show a prima facie case of constructive termination, "plaintiff must, at a minimum, show the employer took actions from which, if unexplained, it can be inferred that it is more likely than not that such actions were based on a prohibited discriminatory criterion." Scotch v. Art Inst. of California Orange Cty., Inc., 173 Cal. App. 4th 986, 1004 (2009).  Furthermore, those actions must have "materially affects the terms, conditions, or privileges of employment." Yanowitz, 36 Cal. 4th at 1051.  To determine whether conduct is actionable, the court must consider the totality of the circumstances, including the, "unique circumstances of the affected employee as well as the workplace context of the claim." Id. at 1052.  The Yanowitz court explained that, "[s]o long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious. This is not, and by its nature cannot be, a mathematically precise test." Id. at 1053.  Factors to be considered include the frequency of the conduct, its severity, whether it is humiliating, whether it interferes with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|---|---|---|---|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

work performance, the effect on the employee's well-being, and whether the plaintiff actually found the environment abusive.  Id.

It is undisputed that in January 2015, prior to resigning, plaintiff received a merit-based pay increase and that he believes KAC was happy with his performance.  Reply SUF at No. 50.  Plaintiff contends, and the defendant disputes, that "defendant retaliated against him by excluding him from meetings, isolating him, and denying him the opportunity to travel to meet with clients.  Id. at No. 59.  Plaintiff completed his formal sexual harassment complaint on or about September 19, 2014.  Id. at No. 27.  Neither party disputes that soon thereafter, plaintiff requested authorization to travel to the East Coast to see clients and his request was denied.  Id. at No. 40.  Furthermore, it is undisputed that plaintiff was not invited to a product meeting in October or November 2014, staff meetings in October or November 2014, and one or two forecast meetings sometime in October or November 2014.  Id. at Nos. 41-43.  Although plaintiff does not recall exactly which meetings, he contends that similar exclusion had never happened before.  Plaintiff Depo., pg. 213:20-22.  The parties agree that plaintiff was not subject to a pay cut, that he was never criticized for his job performance, and that his job performance ratings remained largely the same before and after he complained of harassment.  Reply SUF at Nos. 37-38.

These undisputed facts alone, however, do not resolve whether the "terms, conditions, or privileges of employment" had been materially affected.  The parties dispute the extent to which plaintiff was isolated, why he was isolated, and the reason he was denied travel.  In his declaration, plaintiff claims that his exclusion from a product meeting was "vitally important" and that he had never been denied travel before he lodged his sexual harassment complaint.  Miller Decl. ¶15.  Yanowitz demands a context-specific, factual inquiry of all the circumstances of the employer's acts.  Plaintiffs proof establishes a prima facie case that he was subjected to adverse employment actions and material issues of disputed fact persist as to the materiality of the employers actions.

Turning to plaintiff's prima facie evidence of "a causal link existed between the protected activity and the employer's action," Yanowitz, 36 Cal. 4th at 1042, the Court finds the temporal proximity between the undisputed, adverse employment actions and plaintiff's formal sexual harassment complaint sufficient to establish a prima facie case.  Plaintiff's exclusion from vital meetings and inability to travel, if unexplained, create an inference that KAC's actions were based on discriminatory intent.  Having established a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|---|---|---|---|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

prima facie case, the burden then shifts to KAC to offer a legitimate reason for the adverse employment actions.

### 2.      Defendants Burden to Offer Legitimate Reason for Adverse Employment Actions.

The defendant argues that plaintiff was not permitted to travel to the East Coast because he "would not longer be servicing East Coast clients." Reply SUF at 40. The plaintiff testified that at the time he requested authorization to travel, he was still servicing East Coast clients, but the company planned to divide national sales into regions in the months to follow. Miller Depo., pg. 210:19-211:8. The Court is satisfied that an impending change in clients is a legitimate reason not to permit further travel to visit those clients. However, plaintiff complains of more than his inability to travel to the East Coast. It is undisputed that the plaintiff was suddenly excluded from meetings and a trade show. Reply SUF at Nos. 39; 41-43. The defendant does not offer, nor can the Court discern, a legitimate reason why plaintiff was excluded. Accordingly, the Court concludes that the defendant has failed to offer a legitimate reason for those actions, such that the burden would shift back to the plaintiff.

### 3.      Plaintiff's Burden to Show the Offered Reason is Pretextual.

To the extent that the defendant has offered a legitimate reason for one of its adverse actions, the Court concludes there is still a material issue of disputed fact. Once the employer offers a legitimate reason, shifting the burden back to the employee:

> the employee then must adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred. In determining whether these burdens were met, we must view the evidence in the light most favorable to plaintiff, as the nonmoving party, liberally construing [his] evidence while strictly scrutinizing defendants'. Scotch v. Art Inst. of California Orange Cty., Inc., 173 Cal. App. 4th 986 (2009) (citations omitted).

Plaintiff avers that the timing of the adverse employment actions is sufficient circumstantial evidence of discrimination rather than simply a change in client regions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|---|---|---|---|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

"Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." Bell v. Clackamas Cty., 341 F.3d 858, 865 (9th Cir. 2003).  However, adverse employment action must be "very close" in time to plaintiff's complaints for there to be an inference of intent.  Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).

In its argument that the proximity of plaintiff's isolation and his complaint are too remote from one another, the defendant relies on a number of cases where three to five months was found to be too long to infer retaliatory intent; however, those cases have little bearing here.  Here, it is undisputed that plaintiff's *first*, written complaint occurred in May 2014.[3]  Reply SUF at No. 21.  Contrary to defendant's contention that the temporal clock necessarily commenced in May 2014, plaintiff did not file a formal complaint until September 19, 2014.  Id. at No. 27.  Plaintiff complains of adverse employment actions occurring in October and November 2014.  Viewed in the light most favorable to plaintiff, the undisputed timing of plaintiff's complaint and the rejection of his request to travel satisfies his burden to show a material issue of disputed fact.

Having found material issues of disputed fact regarding the defendant's adverse actions and facts supporting an inference of retaliatory intent, the Court **DENIES** defendant's motion for summary judgment with respect to plaintiff's retaliation claim.

**D.    Claim Four - Constructive Termination.**

To establish constructive termination, an employee must prove that (1) he was subjected to intolerable or aggravating working conditions, (2) the employer "either intentionally created or knowingly permitted" such working conditions, and (3) "that a reasonable person in the employee's position would be compelled to resign." Turner v. Anheuser-Busch, Inc., 7 Cal.4th 1238, 1251 (1994); Garamendi v. Golden Eagle Ins. Co., 128 Cal.App.4th 452, 471-72 (2005).  "The determination whether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact." Thomas v. Douglas, 877 F.2d 1428, 1434 (9th Cir. 1989).  The requisite intent exists where the employer knew about the

---

[3]The parties dispute whether KAC knew earlier and whether plaintiff complained in March 2014.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|---|---|---|---|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

working conditions and failed to remedy them or "deliberately create[d] the intolerable working conditions." Turner, 7 Cal. 4th at 1249–50. The defendant contends that plaintiff's working conditions were tolerable as a matter of law and that plaintiff failed to notify anyone in a position of authority about the intolerable working conditions.

**A.      Intolerable Conditions.**

With respect to whether or not the conditions were tolerable as a matter of law, the Court concludes there is a material issue of disputed fact. The defendant's argument that work conditions were tolerable relies upon cases where the employees were demoted. See e.g., Lee v. Bank of Am., 27 Cal. App. 4th 197, 213 (1994); Gibson v. Aro Corp., 32 Cal. App. 4th 1628, 1634 (1995). Plaintiff does not allege, nor does the defendant contend that plaintiff was demoted. The defendant fails to address the core factual basis of plaintiff's constructive discharge claim - the plaintiff's exclusion from vital meetings and inability to visit clients. With respect to these conditions, the Court is unpersuaded that they were tolerable as a matter of law.

**B.      Actual Knowledge.**

The defendant argues plaintiff was required to tell his employers about the intolerable conditions he faced at work. In the context of an employee's unhappy demotion, the California Supreme Court determined in Turner that, "by requiring employees to notify someone in a position of authority of their plight, we permit employers *unaware of any wrongdoing* to correct a potentially destructive situation." Turner, 7 Cal. 4th at 1250 (1994) (emphasis added). Turner and Gibson stand for the premise that an employer must have *actual* knowledge of the intolerable conditions rather than merely constructive knowledge. Id.; Gibson, 32 Cal. App. 4th at 1638. Furthermore, "the employer must be aware of the impact of the events on the employee." Gibson, 32 Cal. App. 4th at 1640. Neither Turner nor Gibson presented a situation where an employer's actual knowledge could be proven by means other than notification.

It is the defendant's burden here to present undisputed facts entitling it to summary judgment. It is undisputed that plaintiff did not tell management he thought his exclusion was in retaliation, however, that does not mean KAC did not know about the retaliation, let alone plaintiff's work conditions. There is evidence that plaintiff notified management of the conditions he was facing. For instance, plaintiff testified that he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|---|---|---|---|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

raised his inability to attend a trade show with Anthony, his supervisor.  Miller Depo., pg. 207:16-22[4].  Plaintiff presents evidence that the company knowingly retaliated against him.  If it did retaliate, a rational trier of fact could also conclude that the company knew the conditions it intentionally created.

Viewed in the light most favorable to the plaintiff, the Court concludes that there is a factual dispute as to whether the company had actual knowledge of plaintiff's work conditions. The defendant's motion for summary judgment with respect to plaintiff's constructive discharge claim is **DENIED**.

### E.     Claim Five - Battery.

The plaintiff concedes that defendant is entitled to summary judgment with respect to plaintiff's battery claim.  The defendant's motion for summary judgment is **GRANTED** with respect to this claim.

### F.     Punitive Damages.

Lastly, defendant challenges plaintiff's ability to seek punitive damages.  "It is well established that punitive damages are part of the amount in controversy in a civil action," where they are recoverable under one or more of the plaintiff's claims for relief. Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir.2001).  Plaintiff's action is brought pursuant to FEHA, under which punitive damages are available.  Cal. Gov't Code § 12940.  An employer may be liable for punitive damages where it:

> ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate

---

[4]At oral argument, the defendant questioned the basis for the court's reliance on this testimony.  While neither party directed the Court's attention to this particular testimony, it is included in the Miller deposition submitted to the Court.  Dkt. 34.  The fact that plaintiff testified that he protested to Anthony, raises a material issue of disputed fact with regard to KAC's knowledge of plaintiff's work conditions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL    'O'

| Case No. | 2:15-cv-05671-CAS (Ex) | Date | August 22, 2016 |
|---|---|---|---|
| Title | RANDALL MILLER v. KOWA AMERICAN CORP. | | |

employer, the . . . ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation. Cal. Civ. Code § 3294.

Plaintiff must demonstrate oppression, fraud, or malice by clear and convincing evidence. Id.

The defendant argues that punitive damages are unavailable because Shimizu did not work for the defendant and that the defendant did not ratify his acts. The Court has already found a factual dispute as to whether Shimizu worked for KAC and KCL as a single enterprise. The defendant has not put forward undisputed facts showing Shimizu was not an "officer, director, or managing agent of the corporation." Nor is the Court persuaded that no reasonable jury could find Shimizu's conduct entailed oppression, fraud, or malice by clear and convincing evidence.[5]

With respect to punitive damages, the defendant's motion for summary judgment is **DENIED**.

## V. CONCLUSION

In accordance with the foregoing, defendant's motion for summary judgment is here **DENIED IN PART** and **GRANTED IN PART**. The motion is **GRANTED** with respect to claim number five, plaintiff's battery claim, and **DENIED** with respect to the remaining claims and punitive damages.

IT IS SO ORDERED.

|  | 00 | : | 16 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |

---

[5]Having found a factual dispute and basis for punitive damages in this case, the Court does not reach the parties' other arguments as to whether or not KAC ratified Shimizu's conduct. Furthermore, having concluded there is at least one claim under which plaintiff could still be entitled to punitive damages, the Court reserves ruling on the availability of punitive damages with respect to each separate claim.